IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| **RAYMOND ALEXANDER RAY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. CIV 22-196-RAW-JAR |
| ) | |
| **JOE NORWOOD, et al.,** ) | |
| ) | |
| Defendants. ) | |

## OPINION AND ORDER

This action is before the Court on Defendants' motion for summary judgment. (Dkt. 26). Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections (DOC) who is incarcerated at Oklahoma State Penitentiary in McAlester, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at Davis Correctional Facility (DCF), a private prison in Holdenville, Oklahoma.[1] The defendants are Joe Norwood, DCF Warden; Julia Dorman, DCF Chief of Unit Manager; Airnesto Martinez, DCF Unit Manager; James Bailey, Unit Manager; and DCF/Core Civic, Inc. The Court has before it for consideration Plaintiff's complaint (Dkt. 1), a special report prepared by DCF Officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (Dkt. 22), and Defendants' motion for summary judgment (Dkt. 26). Plaintiff has not filed a response to the motion.

### I.     Plaintiff's Allegations

Plaintiff alleges in Claim 1 of the complaint that from June 30, 2021, to December 20, 2021, Defendant Unit Manager Martinez made no effort to investigate Plaintiff's claim that his personal property was stolen when he went to segregation. Plaintiff claims he was not

---

[1] Davis Correctional Facility now is Allen Gamble Correctional Center, an Oklahoma DOC facility. *See* https://oklahoma.gov/doc.html.

allowed to secure or pack his belonging. He had purchased headphones and headphone extensions from the canteen and had received his books by mail.

In Claim 2, Plaintiff claims that when he was placed in segregation on December 20, 2021, his television, remote, cable cords, surge protector, and white Rawlings shoes went missing. Plaintiff asserts he submitted Requests to Staff (RTSs) and a grievance about the matter.

Plaintiff alleges in Claim 3 that he has written many RTSs and filed a form for lost and stolen property. He asserts in Claim 4 that on March 7, 2022, he was placed on grievance restriction for filing grievances about the DCF staff's failure to review the cameras to determine what happened to his property.

Plaintiff requests relief in the form of monetary reimbursement for his lost or stolen property or replacement of the property from the canteen. He also asks for a transfer from DCF.[2]

## II. Standard of Review

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving

---

[2] As stated above, Plaintiff now is housed at Oklahoma State Penitentiary.

party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

A pro se plaintiff's complaint must be broadly construed under this standard. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*. A reviewing court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555. The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997). With these standards in mind, the court turns to the merits of Defendants' motion.

## III.   Exhaustion of Administrative Remedies

Defendants allege, among other things, that Plaintiff has failed to exhaust the administrative remedies for any of his claims. "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met

must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). He must properly complete all required steps of the grievance process to exhaust his administrative remedies. *Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. Dec. 28, 2007); *see also Woodford v. Ngo*, 548 U.S. 81, 90 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .").

Terry Underwood, DCF Grievance Coordinator, states by affidavit that an administrative remedies policy was available for inmates' use at DCF. (Dkt. 26-4). The policy is Oklahoma DOC's grievance policy OP-90124. (Dkt. 26-5). The Oklahoma DOC administrative remedies policy clearly sets forth the steps an inmate must follow to exhaust administrative remedies. (Dkt. 26-4 at 2).

Most issues or concerns that an inmate may have had while confined at DCF could have been addressed through the grievance process, with the specific exception of personal property issues. The DOC grievance policy clearly states that lost or potentially stolen property issues which occur at a private facility, such as DCF, cannot be grieved through the DOC administrative remedies processes, but instead must be addressed through the property policy of the private facility. (Dkt. 26-4 at 2)

According to Underwood's affidavit, DCF Property Policy 14-6 provided an avenue for inmates to make property claims. A copy of this policy was made available to inmates on their housing units or by request from the facility library. The policy and how to address property claims also was discussed in the facility handbook, which was provided to every

inmate upon arrival at DCF.  Underwood regularly reminded inmates that property claims were to be addressed under the 14-6 policy rather than by the grievance process.  Unit Managers for each unit also were knowledgeable about this issue and could provide forms or information related to how to obtain a form.  (Dkt. 26-4 at 2).

Mary Morrison, DCF Property Officer, states by affidavit that DCF Property Policy 14-6 instructed that an inmate's property claims must be submitted on a 14-6-D Lost/Damaged/Stolen Property Claim form, and a claim had to be submitted within seven calendar days of the incident.  (Dkt. 26-3 at 2).  If a claim was submitted and was subsequently denied, the inmate could submit a 14-6-E Denied Property Claim Appeal Form within 15 calendar days to the Warden/Administrator for a final decision.  (Dkt. 26-1 at 16).

Non-property claims and issues were addressed through the DOC administrative remedies policy, OP-090124, which required an inmate to initially attempt to resolve any issue through informal resolution by submitting an RTS to the appropriate staff member.  Then, if the inmate remained unsatisfied, he was required to file a formal grievance.  The final step in the administrative remedies process directed an inmate to make a final appeal of his concerns to the DOC Administrative Review Authority at DOC Headquarters.  (Dkt. 26-4 at 2-3).

Grievances filed by DCF inmates were routed to the warden and then to Underwood who date stamped the grievance and assigned an identifying number. Underwood performed an initial review of the grievance to determine whether the submission complied with the DOC policy and procedural provisions.  If a grievance was not filed in compliance with the grievance policy, Underwood prepared a proposed return memorandum for the warden's consideration.  A return memorandum noted each procedural error and contained suggestions and recommendations of what was needed to correct the procedural errors.  *Id.* at 3.

### A.   Property Claim Forms

DCF records indicate that Plaintiff submitted two Form 14-6D property claim forms. Claim No. 2021-60 concerned towels, a cup, a toothbrush, a toothbrush holder, and a magazine. (Dkt. 26-2 at 1-3). Officer Morrison reviewed the claim and concluded that Plaintiff's towel and washcloth should be replaced. *Id*. at 2. Plaintiff signed a release of claims receipt. (Dkt. 26-2 at 3). There is no indication that Plaintiff submitted a Denied Property Claim Appeal, Form 14-6E.

Claim No. 2022-140 concerned Plaintiff's missing headphones, dictionary and thesaurus, sweatshirt, and headphone extensions. *Id*. at 4-6. Officer Morrison reviewed the matter and concluded the items were not in Plaintiff's cell when he was moved to segregation. *Id.* at 5. She recommended that the claim be denied, and the warden approved the recommendation. *Id*. Again, there is no evidence that Plaintiff appealed the denial.

On September 9, 2022, Officer Morrison signed a completed inmate property inventory form, because Plaintiff was being transferred to another prison facility. The form showed the property in Plaintiff's possession at the time of his transfer. *Id*. at 6; Dkt. 26-3 at 4.

### B.   Grievances

A review of DCF's grievance records and grievance logs shows that Plaintiff filed seven grievances that were received between August 2, 2021, and March 7, 2022. None of these grievances, however, was properly submitted or pursued by Plaintiff. (Dkt. 26-4 at 3).

Grievance Coordinator Underwood asserts that Plaintiff repeatedly was provided instructions about the DOC grievance policy steps for exhaustion of administrative remedies and that property claims needed to be addressed through the CoreCivic 14-6 property policy procedure. Plaintiff, however, continued to submit grievances that did not comply with the grievance policy and that should have been submitted under the property policy. *Id*.

6

Grievance No. 2021-1001-00304-G was submitted by Plaintiff on August 2, 2021, and alleged his property was lost or stolen while he was in segregation. The grievance was returned to him unanswered with a return memorandum clearly identifying for him that the grievance had not been properly submitted. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 4; Dkt. 26-6 at 4-7).

Grievance No. 2021-1001-00417-G, submitted by Plaintiff on December 27, 2021, concerned stolen property. The grievance was returned to him unanswered with a return memorandum clearly identifying for him that the grievance had not been properly submitted. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 4; Dkt. 26-6 at 8-10).

Grievance No. 2022-1001-00013-G, concerning missing property, was submitted on January 12, 2022. The grievance was returned to him unanswered with a return memorandum clearly identifying for him that the grievance had not been properly submitted. He also was notified that he was being officially warned that further abuse of the grievance process would result in his being placed on grievance restriction. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 4; Dkt. 26-6 at 11-16).

Grievance No. 2022-1001-00016-G, submitted on January 13, 2022, concerned an alleged assault and property that was stolen when he went to segregation. The grievance was returned to him unanswered with a return memorandum clearly identifying that the grievance had not been properly submitted. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 4; Dkt. 26-6 at 17-21).

Grievance No. 2022-1001-00034-G, submitted on January 13, 2022, again referenced the property that allegedly was stolen. The grievance was returned unanswered with a return memorandum specifically noting the deficiencies in his submission. Plaintiff was advised that he was on grievance restriction and that property issues were not grievable at a private

7

prison under DOC Policy OP-090124. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 4; Dkt. 26-6 at 22-26).

Grievance No. 2022-1001-00050-G was submitted on February 7, 2022, again referencing the property that allegedly was stolen while Plaintiff was in segregation. The grievance was returned unanswered with a return memorandum noting the deficiencies in his submission, in particular that property issues are not grievable at a private facility. No issues or claims were exhausted by this grievance submission. (Dkt. 26-4 at 5; Dkt. 26-6 at 32-33).

Grievance No. 2022-1001-00071-G, submitted on March 7, 2022, also referenced the alleged stolen property and his being taken to segregation. The grievance was returned unanswered with a return memorandum noting the deficiencies in the submission. Plaintiff also was provided with a formal letter stating that he had been placed on 12-month grievance restriction. No issues or claims were exhausted by this grievance. (Dkt. 26-4 at 4; Dkt. 26-6 at 34-41)

### IV.  Due Process Claim

Plaintiff does not expressly raise a due process claim in his complaint, however, he claims his "Amendment 5, Protection of rights to property" rights were violated in each claim. Respondent maintains Plaintiff was not deprived of his due process rights.

In *Coburn v. Wilkinson*, 700 F. App'x 834 (10th Cir. 2017), an inmate alleged property loss following his placement in segregation. The Tenth Circuit noted that the plaintiff had not provided evidence that the process available to him was "unresponsive or inadequate." *Id.* at 837. The Court found that though his claim had been denied, he had "received the full measure of due process to which he was entitled." *Id*.

Here, the Court finds Plaintiff clearly had access to the property claim forms, and his submitted forms were answered. He, however, did nothing to present and exhaust any specific due process claim. Therefore, the due process claim fails.

8

## V.    Discussion

It is clear from the attached records that Plaintiff did not properly use the existing remedies for lost property. To the extent he utilized the DCF Property Claim Policy, he failed to exhaust the available remedies through an appeal utilizing the 14-6E Denied Property Claim Appeal form. As for his grievances, all of them concerned his lost or stolen property, which cannot be presented in a grievance at a private prison facility.

There is no evidence that Plaintiff was in any way thwarted or impeded from properly using the administrative remedies process. It is clear from the record that the necessary forms were available to Plaintiff, and the grievance process and procedure also were available to him. (Dkt. 26-4 at ¶ 20). Plaintiff, however, continued to ignore staff recommendations to use the Property Policy 14-6 process rather than the grievance process. *See* DOC Grievance Policy OP-090124, §X(A)-(B).

## VI.    Conclusion

After careful review, the Court finds there are no genuine issues of material fact with regard to the fact that Plaintiff has not properly exhausted the administrative remedies for the claims set forth above. Therefore, summary judgment is granted for these claims.

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 26) is GRANTED, and this action is DISMISSED for Plaintiff's failure to exhaust administrative remedies pursuant to 42 U.S.C. § 1997e(a).

**IT IS SO ORDERED** this 21st day of February 2024.

_____
RONALD A. WHITE
UNITED STATES DISTRICT JUDGE